UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS O. JACKSON,

                Plaintiffs,

v.

KHRIS NEVINS, *et al.*,

                Defendants.

_____/

Case No. 1:14-cv-1081

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on a motion for summary judgment filed by defendants Nevins, Hogle, Huss, Wood, Corbett, Lewis, Grandy, Karber, Christiansen, Thebo, and Cheney (ECF No. 79). The motion is unopposed.

### I.    Background

Plaintiff's complaint involved 21 causes of action of alleged unconstitutional conduct which spanned over one year at the Ionia Correctional Facility (ICF).[1] Defendants have moved for summary judgment on some of plaintiff's claims for lack of exhaustion.

### II.    Defendants' motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The Court sorted plaintiff's allegations into 21 claims in its order entered on September 19, 2016. *See* Order (ECF No. 45, PageID.161-164).

Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is

genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties'

burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment,

the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

"The fact that there has been no response to a summary judgment motion does not,

of course, mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483,

486 (2d Cir. 1996).  The trial court is required to "intelligently and carefully review the legitimacy

of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion."

*Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).  However, when a

motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports

an argument that the trial court must conduct its own probing investigation of the record" to

demonstrate the existence of genuine issues of material fact.  *Id.* at 405.

### B.     Failure to Exhaust

### 1.     Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison

conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See*

*Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must

exhaust available administrative remedies, even if the prisoner may not be able to obtain the

specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520;

*Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA

was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes
> concerning the exercise of their responsibilities before being haled into court.  This
> has the potential to reduce the number of inmate suits, and also to improve the
> quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies,

prisoners must complete the administrative review process in accordance with the deadlines and

other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to

'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.     MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances.

*See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a

problem with the staff member within two business days of becoming aware of the grievable issue,

unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved,

3

then the grievant may file a Step I grievance on the prescribed form within five business days after

the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy

Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be
> limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,
> why, how).  Dates, times, places and names of all those involved in the issue being
> grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate

grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does

not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response,

or does not receive a timely response, he must send a completed Step III grievance, using the

appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3.      Discussion

### A.      Claims 1, 7, 8, 14, 19, 20, and 21.

Defendants point out that plaintiff filed 52 grievances through Step III while

incarcerated at ICF.  *See* MDOC Prisoner Step III Grievance Report (ECF No. 58-1, PageID.223-

256).  Defendants summarized these grievances in a chart.  *See* Chart (ECF No. 80, PageID.699-

702).  Based on these records, defendants point out that plaintiff failed to file any grievances with

respect to the following claims:

> 1. In January 2013, Deputy Warden Huss, Capt. Hogle and Inspector Nevins stated
> that they were aware of plaintiff's reputation of always complaining about prison
> conditions and ordered him to cease sending mail to organizations complaining
> about the prison, at which time Capt. Hogle tore up plaintiff's mail and threatened
> to retaliate against plaintiff for sending the mail by fabricating a misconduct to
> place him in segregation;

7. In May 2014, Deputy Warden Huss retaliated against plaintiff by keeping him in segregation and informing him that he would have been released but for his grievances;

14. In May 2014, Grievance Coordinator Lewis retaliated against plaintiff by placing him on grievance restriction because plaintiff filed a grievance against Lewis with the MDOC;

19. From February 2014 through June 2014, Capt. Hogle, Inspector Nevins, and Deputy Warden Huss restricted plaintiff from receiving mail from Jewish organizations; and,

21.  Capt. Hogle, Deputy Warden Huss, Inspector Nevins and Chaplain Cheney engaged in a conspiracy "to prevent plaintiff from exercising his Jewish faith" because defendants "believed that no black Jews exist."

*See* Defendants' Brief (ECF No. 80, PageID.710).

In addition, defendants point out that plaintiff did not properly exhaust a grievance with respect to Claim 8, i.e., "From April 24, 2014 through June 2014, Mailroom Clerks Karber and Christiansen retaliated against plaintiff by destroying legal correspondence sent to another prisoner." *See* Order (ECF No. 45, PageID.162).  The only grievance related to this subject matter (i.e., mail room staff destroying legal correspondence on April 24, 2014) was Grievance No. ICF-14-04-0917-28b (ECF No. 58-2, PageID.289).  However, this grievance was rejected because "[i]t is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance" and that plaintiff "did not use a name only titles" and that the responder was "unable to investigate due to not knowing who to ask about what you say was told to you." *See* Rejection Letter (ECF No. 58-2, PageID.290).  Accordingly, plaintiff's Claim 8 is unexhausted.

Defendants also point out that plaintiff did not properly exhaust a grievance with respect to Claim 20, i.e., "In December 2013, Chaplain Cheney interfered with plaintiff's exercise of his religious beliefs by removing him "from the Jewish diet called 'vegan' without plaintiff's consent." Order (ECF No. 45, PageID.164). Defendants note that the only grievance which addressed an issue related to religious meals, Grievance No. ICF-13-12-2294-28i ("2294") (ECF No. 58-5, PageID.511), did not support the claim. This grievance, with an incident date of November 26, 2013, was directed at "A/Warden Cathy Stoddard" for *refusing to remove* plaintiff from the Kosher diet program. *See* Grievance No. 2294. There is no evidence that plaintiff filed a grievance against Chaplain Cheney for removing him from the religious diet (i.e., the relief that plaintiff wanted from Stoddard). Accordingly, Claim 20 is unexhausted.

Based on this record, plaintiff failed to properly exhaust Claims 1, 7, 8, 14, 19, 20, and 21. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants are entitled to summary judgment with respect to all of these claims.

### B.      Claim 4

Defendants point out that plaintiff did not exhaust all of the aspects of Claim 4, i.e., "On March 28, 2013, Deputy Warden Huss, Inspector Nevins, and Capt. Hogle interrogated plaintiff, after which Hogle and Huss confiscated all of plaintiff's personal property," and then Hogle "fabricated disciplinary action against plaintiff by claiming that plaintiff possessed a map in his property." Order (ECF No. 45, PageID.161). The only relevant grievance related to that date, No. ICF-13-04-0749-19z (ECF No. 58-5, PageID.497), grieved Capt. Hogle's confiscation of plaintiff's property on March 28, 2013. Because plaintiff did not properly exhaust the allegations in Claim 4 directed that Deputy Warden Huss, Inspector Nevins, and Capt. Hogle

interrogated him and that Huss confiscated his property, those defendants are entitled to summary

judgment on Claim 4.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

          **C.**       **Claim 5**

Defendants point out that plaintiff did not exhaust his claims against defendants

Corbett and Wood as set forth in Claim 5, i.e., "In May 2013, Capt. Hogle and Inspector Nevins

ordered COs Corbett and Wood to confiscate and destroy plaintiff's complaints and grievances."

*See* Order (ECF No. 45, PageID.161); Defendants' Brief at PageID.710.  The only relevant

grievance, No. ICF-13-05-1106-26i (ECF No. 58-5, PageID.468), grieved Hogle and Nevins for

ordering unit officers to confiscate his complaints and grievances about inhumane conditions at

ICF on May 6, 10, and 13, 2013.  This grievance does not address any claim against defendants

Corbett and Wood.  Accordingly, Corbett and Wood are entitled to summary judgment on Claim

5.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

          **D.**       **Claim 16**

Defendants point out that plaintiff did not properly exhaust Claim 16, i.e., "From

February 2014 through June 2014, Deputy Warden Huss invaded plaintiff's bodily privacy by

viewing plaintiff using the toilet, changing clothes, and performing personal hygiene in his cell for

her own sexual gratification."  *See* Order (ECF No. 45, PageID.163).  The only grievance which

addressed this claim against Huss is Grievance No. ICF-14-03-0462-28c (ECF No. 58-2,

PageID.337), which grieved one similar incident which allegedly occurred on February 27, 2014.

Based on this record, the only portion of Claim 16 which is properly exhausted is plaintiff's claim

that defendant Huss engaged in the alleged conduct on February 27, 2014.  Accordingly, defendant

Huss is entitled to summary judgment as to all aspects of Claim 16 except the alleged incident

which occurred on February 27, 2014. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

### IV.    Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment on the basis of exhaustion (ECF No. 80) be **GRANTED**.  Consistent with this recommendation, defendants should be granted summary judgment as to the following claims:

a.    Claims 1, 7, 8, 14, 19, 20, and 21.

b.    The allegations in Claim 4 that Deputy Warden Huss, Inspector Nevins, and Capt. Hogle interrogated plaintiff and that Huss confiscated his property.

c.    The allegations in Claim 5 directed against defendants Corbett and Wood.

d.    The allegations in Claim 16 that Inspector Huss observed him naked on any date other than February 27, 2014.

I further recommend that this case proceed on the following Claims 2, 3, 4 (that Capt. Hogle confiscated property on March 28, 2014), 5 (as to Capt. Hogle and Inspector Nevins), 6, 9, 10, 11, 12, 13, 15, 16 (as to Deputy Warden Huss' alleged conduct on February 27, 2014 only), 17, and 18.

Dated:  May 22, 2018                    /s/ Ray Kent
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).